

ORDERED in the Southern District of Florida on November 13, 2012.

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Chapter 11 |
| ARROW AIR, INC. AND | Case No. 10-28831-BKC-AJC |
| ARROW AIR HOLDINGS CORP. | Case No. 10-28834-BKC-AJC |
| | (Jointly Administered) |
| Debtors. _____/ | |
| BARRY E. MUKAMAL, Liquidating Trustee, on behalf of the Arrow Air Creditor Trust, | Adv. No. 12-1710-BKC-AJC-A |
| Plaintiff, | |
| v. | |
| AMERICAN EXPRESS COMPANY, | |
| Defendant. _____/ | |

**MEMORANDUM DECISION AND ORDER DENYING
PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

This matter is before the Court upon the *Motion for Leave to Amend Complaint* [ECF No. 33] (the "Amendment Motion"), filed by Barry E. Mukamal ("Trustee" or "Plaintiff"), as Liquidating Trustee of the Arrow Air Creditor Trust, successor to and representative of the bankruptcy estates of Arrow Air, Inc. ("Arrow") and Arrow's parent company, Arrow Air Holdings Corp. ("Holdings"), and upon the Response to the Amendment Motion [ECF No. 41], filed by American Express Company ("Defendant"). The Court held a hearing on the Motion and Response on October 17, 2012 and considered the arguments of counsel for the Trustee and the Defendant. For the reasons set forth herein, the Court denies the Amendment Motion and determines that the Trustee's claims against American Express Travel Related Services Company, Inc. ("TRS") do not relate back to the filing of the timely Complaint against the Defendant; therefore, such claims are barred pursuant to 11 U.S.C. § 546(a).

At the hearing, counsel for the Defendant requested the Court to take judicial notice of the case dockets of the bankruptcy cases of Arrow and Holdings, including the claims registers, the docket of the above-captioned adversary proceeding (the "Adversary Proceeding"), and a form 10-K publicly filed by Defendant with the Securities and Exchange Commission on February 24, 2012. The Court is authorized to take judicial notice of such matters and does so for purposes of considering the Amendment Motion. *Bryant v. Avado Brand, Inc.,* 187 F.3d 1271, 1280 (11th Cir. 1999) (a court may take judicial notice of documents publicly filed with the Securities and Exchange Commission for purposes of considering a motion to dismiss "for the purpose of determining what statements the documents contain."); *Sharifeh v. Fox (In re Sharif),* 457 B.R. 702, 707 (Bankr. N.D. Ill. 2011) (a court is authorized to take judicial notice of related matters and proceedings before the same court).

**BACKGROUND**

Arrow and Holdings (collectively, the "Debtors") voluntarily filed separate petitions for Chapter 11 relief on June 30, 2010 (the "Petition Date"). Arrow's bankruptcy schedules and Statement of Financial Affairs [ECF No. 129; Bankr. Case No. 10-28831-AJC], filed on July 26, 2010, list "American Express" as a trade creditor having a $94,043.99 claim and as a recipient of $351,220.55 within ninety days prior to the Petition Date. On August 23, 2010, TRS' attorneys, the law firm of Becket and Lee LLP, filed TRS' *Request of Creditor Pursuant to Bankruptcy Rule 2002(g) Providing Address For Service Of Notices* [ECF No. 177; Bankr. Case No. 10-28831-AJC]. Two days later, TRS timely filed proofs of claim numbered 112-1, 113-1 and 114-1 ("TRS Claims") in Arrow's bankruptcy case for unpaid charge card debt totaling $35,359.21. The electronic case docket of Arrow's bankruptcy case reveals that, prior to the commencement of the Adversary Proceeding, the Trustee never sought information regarding the TRS Claims pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") or subpoenaed information from Defendant or TRS.

The Trustee's attorneys in this Adversary Proceeding were actively involved in the Debtors' bankruptcy cases as counsel for the Official Committee of Unsecured Creditors since July 14, 2010 [ECF No. 114; Bankr. Case. No. 10-28831-BKC-AJC]. On November 17, 2010, the Debtors filed their *Amended Joint Chapter 11 Plan of the Debtors* [ECF No. 378] (the "Plan"), which was approved and confirmed by this Court on December 17, 2010 [ECF No. 473] (the "Confirmation Order"). TRS submitted three ballots, for each of the TRS Claims, and voted in favor of confirming the Plan [ECF No. 454 at 8]. Pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement for the Arrow Unsecured Creditor Trust, the Trustee is the duly appointed and acting Trustee of the Trust. On June 28, 2012, two days before the expiration

of the statute of limitations under 11 U.S.C. § 546(a), the Trustee filed his *Adversary Complaint to Avoid and Recover Avoidable Transfers* [ECF No. 1] (the "Complaint") against Defendant, initiating the Adversary Proceeding.  The Trustee did not sue TRS.  Pursuant to the Complaint, the Trustee seeks to avoid and recover from Defendant a total of $6,010,382.01 in alleged transfers by Arrow based on preference and fraudulent transfer claims.

In response to the Complaint, Defendant timely filed its pending Motion to Dismiss the Complaint [ECF No. 13] for failure to state a claim. Also, on September 14, 2012, Defendant filed its motion for immediate withdrawal of the reference of the Adversary Proceeding [ECF No. 18] and objection to the Court's entry of final orders and judgments [ECF No. 19] (collectively, the "Reference Withdrawal Motion").  Pursuant to the Reference Withdrawal Motion, Defendant argued that it is entitled to a jury trial on all claims set forth in the Complaint, in part because Defendant did not file a proof of claim in the Debtor's bankruptcy cases. According to Defendant's Form 10-K for the year 2011, which is publicly filed by Defendant with the Securities and Exchange Commission, TRS, *i.e.,* the entity that filed the TRS Claims, is the Defendant's "principal operating subsidiary . . . ." American Express Co.*,* Annual Report (Form 10-K), at 1 (Feb. 24, 2012).

On September 28, 2012, the Trustee simultaneously filed a response to the Reference Withdrawal Motion [ECF No. 35] and the Amendment Motion.  Pursuant to the Amendment Motion, the Trustee seeks leave from the Court to file an amendment to the Complaint (the "Requested Complaint"), which would add TRS as a defendant to the Adversary Proceeding so the Trustee may assert the same claims as are pending against Defendant against TRS, plus a claim based on an objection to the TRS Claims pursuant to 11 U.S.C. § 502(d).  Pursuant to the Response opposing the Amendment Motion, Defendant argues that the avoidance claims the

Trustee seeks to assert against TRS do not relate back to the filing of the Complaint and, consequently, they are barred by the statute of limitations under 11 U.S.C. § 546(a). Defendant also argues that granting leave to the Trustee to file the Requested Complaint should be denied on grounds of futility because the Requested Complaint would be subject to dismissal.

## CONCLUSIONS OF LAW

**I.    Legal Standard Governing the Amendment Motion**

Since the Petition Date was June 30, 2010, the Trustee's deadline under 11 U.S.C. § 546(a) to assert avoidance claims against TRS was June 30, 2012. Given that the Amendment Motion was filed almost three months after the deadline, the parties do not dispute that the Court must consider whether the Trustee's claims against TRS relate back to the date of the filing of the Complaint pursuant to Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding pursuant to Bankruptcy Rule 7015.

Although leave should be freely given to amend pleadings when justice requires, if an amended complaint is subject to dismissal, the Court is authorized to deny leave to amend on futility grounds. *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999). Here, the Court defers ruling on whether the Requested Complaint is subject to dismissal for pleading defects until the upcoming hearing on Defendant's motion to dismiss the Complaint because most of the allegations in the Requested Complaint with respect to the Defendant are the same as those set forth in the Complaint. However, with respect to the avoidance claims against TRS, the Court notes that "[a]n amendment filed after the applicable statute of limitations has run and where the claims do not relate back to the date of an earlier timely pleading will . . . be deemed futile." *Picard v. Madoff (In re Bernard L. Madoff Inv. Securities LLC),* 468 B.R. 620, 627 (Bankr. S.D.N.Y. 2012).

5

Rule 15(c)(1)(C), Fed. R. Civ. P., which applies when a claim is amended to change the party or the naming of the party, provides that the claim shall relate back to the date of the original pleading if: (a) the requirements of Fed. R. Civ. P. 15(c)(1)(B) are met, and (b) if, within the period provided under Fed. R. Civ. P. 4(m), the party affected:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). *See also In re Bernard L. Madoff Inv. Securities LLC,* 468 B.R. at 629-31. At the hearing, the parties agreed that the only dispute for the Court to resolve concerning the relation back doctrine is whether or not the Trustee has met his burden to demonstrate whether failure to timely file avoidance claims against TRS was the product of a "mistake" concerning TRS' identity.

## II.     The Trustee's Failure to Timely Sue TRS Cannot be Considered a Mistake.

The Supreme Court's *Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485 (2010) decision is instructive on the issue of whether the Trustee's failure to assert avoidance claims against TRS before June 30, 2012 should be deemed a mistake. In that case, the Supreme Court looked to Black's Law Dictionary for the meaning of "mistake", defined as "'[a]n error, misconception, or misunderstanding; an erroneous belief.' Black's Law Dictionary 1092 (9th ed.2009)". 130 S.Ct. at 2494. It then explained that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Id.*

The *Krupski* case involved a plaintiff's attempt to substitute a defendant for the wrong defendant after she was initially led to believe that the substituted party was the proper party.

6

130 S.Ct. at 2491. In that case, the plaintiff was injured when boarding a cruise ship, and she attempted to sue after settlement negotiations failed. 130 S.Ct. at 2490. After dealing with counsel for Costa <u>Cruise</u> pre-suit, the plaintiff's lawyer named such entity as a defendant weeks before the statute of limitations period expired. *Id.* at 2491. During the lawsuit and after expiration of the statute of limitations, Costa Cruise notified the plaintiff that the entity that should have been sued was Costa <u>Crociere</u>. *Id.* After dismissing Costa Cruise from the lawsuit, the plaintiff filed a complaint against Costa Crociere. *Id.*

In a motion before the trial court, the plaintiff explained that the following formed the basis for her mistaken identity of the proper defendant:

> The travel documents prominently identified Costa Cruise and gave its Florida address; Costa Cruise's Web site listed Costa Cruise in Florida as the United States office for the Italian company Costa Crociere; and the Web site of the Florida Department of State listed Costa Cruise as the only "Costa" company registered to do business in that State. . . . Krupski also observed that Costa Cruise's claims administrator had responded to her claims notification without indicating that Costa Cruise was not a responsible party.

*Id.* at 2491 (internal citations omitted). The Supreme Court ruled that Costa Crociere should have known that it would have been named as a defendant and that the plaintiff made a mistake concerning the identity of the defendant. The Supreme Court held that the plaintiff should have been allowed to substitute the proper defendant for the wrong defendant. *Id.* at 2498.

The facts and circumstances herein are distinguishable from those in the *Krupski* case. Here, TRS, although related in certain respects to the Defendant, is a separate and distinct entity and had no reason to know that the Trustee intended to assert claims against it. Although it received notice generally that the Complaint had been filed, it was not served with the Complaint and would have no reason to have reviewed the Complaint. The general notice that is provided

7

to all creditors does not contain any specifics of the Complaint that would have put TRS on notice that the Trustee really intended to sue it.

The Trustee knew or should have known TRS' identity as it was a creditor who filed proofs of claim and notices in Arrow's bankruptcy case more than a year and a half before the Complaint was filed, and TRS also submitted ballots to vote in favor of confirming the Plan a year and a half before the Complaint was filed. Moreover, Defendant's Form 10-K for the year 2011, which identifies TRS as Defendant's principal operating subsidiary and explains that both are separate entities, was publicly filed with the Securities and Exchange Commission four months before the filing of the Complaint.

Furthermore, the Trustee seeks to add TRS as an additional defendant, not substitute TRS as the proper party. More significantly, however, the Trustee was on notice more than one and a half years prior to the filing of the Complaint against Defendant that TRS was a creditor in this case, having filed proofs of claim, notices and ballots. With research and investigation, the Trustee could have and should have discovered early on the identity of TRS, distinct from the Defendant he chose to name, and could have learned that TRS was the proper entity to be included as a Defendant in the Complaint. The Trustee had every opportunity to seek information from TRS, the Defendant and from public records between entry of the Confirmation Order on December 17, 2010 and the filing of the Complaint a year and a half later, but the Trustee apparently did not do so.

At the hearing, the Trustee argued that this is a case of mistaken identity because all of Arrow's records available to the Trustee demonstrate that payments were made to "American Express". In fact, this is consistent with Arrow's bankruptcy schedules and Statement of Financial Affairs. However, "American Express" is not an entity and the Complaint was not

8

filed against "American Express"; the named Defendant is American Express Company. The decision to sue American Express Company likely resulted from a lack of knowledge rather than confusion about the entities' identities. An alleged "mistake" based on the Trustee's lack of knowledge is unavailing because, under the circumstances, **"a lack of knowledge does not constitute a mistake."** *Lelieve v. Orosa,* Case No. 10-23677-CIV, 2011 WL 5103949 at *4 (S.D. Fla. 2011) (emphasis added). *Compare Hill v. Oria (In re Juliet Homes, LP),* Adv. Proc. No. 09–03429, 2010 WL 5256806 (Bankr. S.D. Tex. Dec. 16, 2011) (denying the trustee leave to add fraudulent transfer claims against new defendants because the trustee's failure to add the defendants was not based on a mistake of identity).

The Trustee in this case is not unlike the trustee in the *Bernard L. Madoff Investment Securities LLC* case, wherein a material dispute was whether the trustee made a "mistake" in not timely suing the present and former spouses of debtor Bernard L. Madoff's children to avoid and recover fraudulent transfers. 468 B.R. at 624. In the *Madoff* case, the trustee requested leave to file an amended complaint to add the purported spouse defendants as parties to an adversary proceeding, and to bring fraudulent transfer claims in excess of $100 million against them. 468 B.R. at 623-24. The trustee argued that his claims against the purported spouse defendants should relate back to the timely filed complaint because the defendants allegedly knew that the trustee's investigation was continuing, the spouses were beneficiaries of transfers listed in the original complaint, and it only became clear to the trustee upon the death of Madoff's son that not naming one of the spouse defendants was a mistake. *Id.* at 624. The spouse defendants opposed application of the relation back doctrine and argued, among other things, that it was reasonable for them to believe the trustee deliberately chose to not sue them in the subject proceeding because he is a sophisticated party that had access to extensive information about the

9

purported defendants, had retained professionals to analyze claims, and he sued the defendants in a separate adversary proceeding. *Id.* The court concluded that the trustee should have been aware of the factual and legal differences between the various parties and that the circumstances were not based on mistaken identity. *Id.* at 629. Rather, the court explained that the trustee was "a sophisticated party . . . in possession of numerous relevant documents . . . [and] armed with a large team of lawyers who had a significant period of time to assist the Trustee in his review and analysis of this documentation." 468 B.R. at 629.

Here, the Trustee, as in *Madoff*, was armed with sufficient lawyers to timely file more than one-hundred and thirty adversary proceedings, and the Trustee and his professionals had more than a year and a half to investigate avoidance claims before filing them. Moreover, the Trustee's counsel was actively involved in the Debtors' bankruptcy cases as counsel for the Official Committee of Unsecured Creditors since July 14, 2010 [ECF No. 114; Bankr. Case. No. 10-28831-BKC-AJC]. Finally, the pleadings, proofs of claim and ballots filed by TRS long before the filing of the Adversary Proceeding and the expiration of the limitations period under 11 U.S.C. § 546(a) provided the Trustee and his professionals with ample notice that TRS was the proper party to be named in the Adversary Proceeding.

During the hearing, counsel for the Trustee argued that relation back applied based on the decisions in *Itel Capital Corp. v. Cups Coal Co., Inc.,* 707 F.2d 1253 (11th Cir. 1983), *Randall's Island Family Golf Centers v. Acushnet Co. (In re Randall's Island Family Golf Centers),* Case No. 02-2278, 2002 WL 31496229 (Bankr. S.D.N.Y. Nov. 8, 2002), and *In re Enron Corp.,* 298 B.R. 513 (Bankr. S.D.N.Y. 2003). Since the hearing, the Court has reviewed these cases and does not find them persuasive given the facts and circumstances of this case. The *Itel Capital Corp.* case, decided before the *Krupski* case, does not address a mistake of identity, except to

explain that such term is construed liberally.  *See* 707 F.2d at 1258.  In allowing the amendment to a complaint to add a defendant, the court in the *Itel* case relied on the fact that the newly named defendant was the 97% owner of the defendant who was already named in the complaint.  The court determined that the newly named defendant, being the 97% owner, was on notice as to the action when it was first filed.  That is not the circumstance in the case *sub judice*.  TRS is a distinct entity from the Defendant and did not have sufficient notice of the action to alert TRS that it was the intended defendant.

Likewise, the Court does not believe the *Randall's Island Family Golf Centers* case supports the Plaintiff's position either.  *Randall's Island Family Golf Centers* involved a plaintiff who made a mistake about the transferee, and only learned of who the actual transferee was after the wrong parties claimed they were mere conduits.  2002 WL 31496229 at *4.  The court stated that "[r]elation back usually depends on what the plaintiff knew about the identity and involvement of the added defendant when he filed the timely pleading. 'If, at the time of filing his initial complaint, plaintiff knew of the identity and possible role of the person whom plaintiff seeks to add as a defendant, there is no mistake for purposes of the relation back doctrine.'" *Id*. at *3 citing *Richardson v. John F. Kennedy Mem'l Hosp*., 838 F.Supp. 979, 987 (E.D.Pa. 1993).  The Trustee in this case had notice of the TRS Claims and other filings by TRS in the bankruptcy cases, and thus could have or should have been aware of its identity and the potential avoidance claims against TRS.  To claim surprise at this late juncture in the proceeding is disingenuous.  The Trustee attempted to add TRS as a party only after Defendant described the TRS Claims in the Reference Withdrawal Motion; however, that information was available to the Trustee prior to filing the Complaint.

Finally, the *Enron Corp.* case involves a creditor's request to amend a proof of claim to add an additional claim against an additional debtor. 298 B.R. at 524. The *Enron* court found that the creditor knew of the identities of the debtors and identified the additional debtor in an exhibit to the original proof of claim. The court held that the creditor's failure to name the additional debtor in the proof of claim was not a matter of choice but rather a mistake based upon the creditor's "inadvertence" which was sufficient to relate back. Notwithstanding the foregoing, the court did not allow the amendment to the proof of claim, stating it would unduly prejudice the debtors and possibly open the floodgates for similar late-filed claims. In this case, the inadvertence which Plaintiff claims results from a failure to investigate the record before June 30, 2012 – not a failure in identifying the proper party defendant. The Court therefore concludes that the Trustee has not met his burden of demonstrating that there was a mistake of identity between American Express Company and American Express Travel Related Services Company, Inc. Based upon the foregoing, it is

ORDERED AND ADJUDGED that the Amendment Motion is DENIED with prejudice to the extent it seeks to add TRS as a Defendant in the avoidance claims. To the extent the Amendment Motion seeks to add TRS as a Defendant to object to its claim(s), the Amendment Motion is DENIED without prejudice to the objection being renewed by motion filed in the main bankruptcy case

###

Submitted By:
Jennifar M. Hill, Esq.
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
*Attorneys for American Express Company*
201 South Biscayne Blvd., 22nd Floor
Miami, FL 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789
E-mail: jmh@lklsg.com

<u>Copy Furnished To:</u>
Jennifar M. Hill, Esq.
(Attorney Hill is directed to serve a conformed copy of this Order upon all parties in interest, and to file a Certificate of Service with the Court confirming such service.)